*625
 
 ODOM, Justice.
 

 The Fourteenth Judicial District of this estate is composed of the Parishes of Cal•casieu, Jefferson Davis, Allen, Beauregard, .and Cameron, and the district is entitled to two judges under the law. The Democratic Executive Committee for the Fourteenth Judicial District met on July 15, 1942, and ordered that a Democratic white primary -election be held throughout the district on September 8, following, for the purpose •of nominating cañdidates for these offices, and one candidate for the office of district .attorney.
 

 The resolution calling the primary election provided that anyone desiring to become a candidate for the office of judge or district attorney should file with the chairman of the Committee a notice of his intention to become a candidate for such office, on or before midnight of August 4, 1942. Three persons — -Judge John T. Hood, Judge Mark C. Pickrel, and T. Arthur Edwards — qualified as candidates for the office of judge by filing with the Committee notice of their intention, to become candidates before the expiratioji of the time prescribed for such filings by the Committee.
 

 The primary election was held, as ordered by the Committee, on September 8. In accordance with a resolution of the Committee, duly adopted, it reconvened on Saturday, September 12, for the purpose of canvassing the returns of the primary election and declaring the results thereof. On that date the Committee canvassed the results as made to it by the commissioners and clerks appointed to hold the election. The Committee declared by resolution adopted on September 12 that, according to the returns made to it, T. Arthur Edwards had received 6,020 votes, John T. Hood had received 13,006 votes, and Mark C. Pickrel had received 10,289 votes. Finding that John T. Hood and Mark C. Pickrel had received the highest number of votes and that each had received a majority of all the votes polled, the Committee declared by resolution that they had been nominated for the two offices of judge and were the candidates of the Democratic Party to be voted for in the general election to be held on November 3, 1942, and the Secretary of State was authorized to place their names upon the official ballot to be used at the general election, in the manner prescribed by law.
 

 T. Arthur Edwards was present at the meeting of the Democratic Executive Committee held on Saturday, September 12, for the purpose of canvassing, counting, and promulgating the returns of the election. After the Committee had canvassed the returns and had found that Edwards had received 6,020 votes, that Hood had received 13,006 votes, and that Pickrel had received 10,289 votes, and before it adopted the resolution declaring that Hood and Pickrel were the nominees, Edwards, anticipating, no doubt, what the action of the Committee would be, filed the following written protest:
 

 “To the Honorable Chairman and Members of the Democratic Executive Committee -Fourteenth Judicial District of Louisiana.
 

 “As a candidate for the Democratic nomination as one of the two Judges to be
 
 *627
 
 nominated in the Primary Election held September 8th, 1942, two to elect, there being three candidates for two offices, only the high man can be declared the nominee under our primary election law and the next two candidates receiving the highest vote are entitled to enter a second primary as decided by our Supreme Court in the case of State ex rel. Dobbins v. McDermott, Chairman, 155 La. page 211 et seq. [99 So. page 41 et seq.]
 

 “Our decisions make a distinction where there are four candidates for two offices and only three.
 

 “I therefore am entitled to participate in the second primary with the Honorable Mark C. Pickrel for the office for which there has been no nominee selected, the nomination of the Honorable John T. Hood for one of the offices to be filled being the only nomination made by the voters in said election, and for various other obvious reasons I protest any action of the Committee declaring or attempting to declare the said Mark C. Pickrel the nominee of the democratic party as one of the Judges for this District, as under the primary law and democratic principles the voters have the legal right to select the nominee and to express the free will of the people, and a Second Primary election should be ordered held by this Committee, according to law.
 

 “I make the official returns of said election as tabulated, or shown by the returns of the Secretary of State, and this Committee, part hereof.
 

 “And in the event this protest and objection is ignored or overruled by the Committee, and in any event I hereby give notice officially of my intention to be a candidate for the office of District Judge in the second primary election.
 

 “Respectfully submitted,
 

 “(Signed) T. A. Edwards
 

 “Candidate
 

 “Lake Charles, Louisiana
 

 “September 12th, 1942”
 

 The Executive Committee, by unanimous vote, “overruled and rejected” the protest and declared .Hood and Pickrel to be the nominees of the Democratic Party for the two offices of judge.
 

 On Monday, September 12, Edwards filed the present suit, in which he recited substantially the facts above set forth relating to the calling and the holding of the primary election and the results thereof.1 He alleged that the Honorable John T. Hood, as high man, was declared the nominee of the Democratic Party for one office only, “and that the action of the committee in declaring the said Mark C. Pickrel the democratic nominee for the other office was arbitrary, illegal, null' and void, and a second primary -should be ordered for select [selecting] the nominee for said second office; that no legal nomination was made therefor, as hereinafter alleged”.
 

 He alleged in Paragraph 7 of his petition that the Judicial Executive Committee “arbitrarily, illegally and unlawfully, in violation of said Primary Election law and the law governing democratic primaries in the State of Louisiana, went beyond the terms and provisions thereof, and sought to, and did usurp judicial powers not
 
 *629
 
 vested in them by law in denying to petition [petitioner] the right to enter a second primary for the office for which there was t no legal nomination; that there is no specific provision of the said primary election law authorizing such illegal action by said Committee, and petitioner avers that under the law only one candidate was nominated for one of the two offices at stake, and that a Second Primary Election should be ordered as provided for by law and the original call of said Committee to be participated in between and by petitioner and the said Mark C. Pickrel”.
 

 The plaintiff Edwards by his pleadings seems to concede that, because the Honorable John T. Hood received more votes than were cast for either of the other two candidates, he was properly declared the nominee for one of the offices of district judge. But he alleged “That the action of the said Committee in declaring the said Pickrel the nominee for the other office is arbitrary, illegal,' null and void, and a second primary should be ordered by the
 
 Court,
 
 and the said Committee Mandamused to hold same” for the nomination of the other judge, because such a procedure “is the only way the free will of the people can be determined and expressed in selecting a choice for the other office, and thereby eliminating any violation of the democratic rule and law prohibiting single shot votes”.
 

 The plaintiff prayed- that service be made upon the chairman of the Judicial Executive Committee, individually and as representative of the other members thereof, and that service be made upon the Honorable Mark C. Pickrel, and that after trial of the issues raised there be judgment in his favor, “annulling said Committee’s action in declaring the said Mark C. Pickrel the democratic nominee for one of the offices of Judge of said Judicial District, and that- a Second Democratic Primary Election be ordered held as provided for in the original call of said Committee; * * * That a writ of mandamus issue commanding said Executive Committee, through its Chairman, * * * to call said second primary and hold the same as provided for in the original call”.
 

 The Executive Committee, one of the defendants in the suit, filed an exception of no cause and no right of action. The Honorable Mark C. Pickrel, the other defendant, filed a similar exception. In addition to these exceptions, defendants filed pleas of prescription, these pleas being based upon the alleged ground that plaintiff’s suit was not filed within two days after the Committee promulgated the returns of the election and declared Hood and Pickrel to be the nominees of the party.
 

 The defendants, reserving their rights under the exceptions and pleas’ filed by them, filed answer in which they admitted the allegations of fact set forth in plaintiff’s petition. But they specifically denied those allegations of the petition wherein plaintiff alleged that under the primary election law of the state, which is Act 46 of 1940, the Honorable Mark C. Pickrel was not nominated at the first primary election, and that a second primary election should be held, and that the Judicial
 
 *631
 
 Executive Committee should be compelled to order a second primary.
 

 There was judgment maintaining the exceptions of no cause and no right of action filed by the defendants, and dismissing plaintiff’s suit at his cost, from which judgment T. Arthur Edwards, the contestant, appealed to this court.
 

 We find it unnecessary to discuss or pass upon the plea of prescription filed by the Committee and Mark C. Pickrel, the defendants, for the reason that the judgment maintaining the exceptions of no cause and no right of action is correct. The facts are not disputed. Plaintiff alleged, and the record clearly shows, that there were only three candidates for the two offices of judge, and that the contestant Edwards received 6,020 votes, that Hood received 13,006 votes, and that Pick-rel received 10,289 votes — or a total of 29,315 votes. The Committee reached the conclusion, therefore, that, since each voter was required by law to vote for two candidates and since the total vote for the three candidates was 29,315, one-half of this total, or 14,657 votes, represented the number of electors who voted at the primary election; so that each candidate who received more than one-half of 14,-657 votes received a clear majority of all the votes cast. It is perfectly evident, therefore, that each of the candidates Hood and Pickrel received a clear majority of all the votes cast, and equally evident that the third candidate, the contestant Edwards, did not receive a majority.
 

 In this connection, we note that the total number of votes received by the three candidates, according to the tabulation made by the Committee, was 29,315. This being an odd number, we conclude that the Committee must have erred in tabulating or adding the figures shown by the returns of the commissioners, or that the commissioners themselves erred in their additions, because, if each voter voted for two candidates, as required by law, the total vote would have been an even number, divisible-by two. This slight error does not seem to have been detected by the litigants, or, if detected, to have been considered of no importance.
 

 The exceptions of no cause and no right of action are based upon the proposition that, as a matter of law, plaintiff’s petition discloses on its face that he has no right to contest the nomination of Hood and Pickrel. We think the exceptions are well founded for the reason that not only did Judge Hood receive the highest number of votes cast and Judge Pickrel the next highest, but that each received a majority of all the votes cast.
 

 It is conceded by Edwards, the contestant, that it was proper for the officers-appointed to hold the election to make their returns to the Judicial Executive Committee, and that under the law it was-the function of that Committee to canvass, count, and promulgate the returns and to certify the results to the Secretary of State. Section 76, Act 46 of 1940, the Primary Election Law, provides that:
 

 “ * * * it shall be the duty of the Chairman or Secretary of each of the Committees to whom said returns have been forwarded to convene his Committee
 
 *633
 
 for the purpose of declaring the nomination of the person, or persons, shown by the certification of the Secretary of State as having received the greatest number of votes. They shall certify the name, or names, of such person, or persons, to the Secretary of State.”
 

 The Committee in this case complied literally with the provisions of the above quoted portion of the act. It met, canvassed and promulgated the results of the election, and, finding that Judge Hood and Judge Pickrel had each' received more votes than the other candidate and that each had received a majority of all the votes polled in the primary election for district judge, declared them the nominees of the party, and authorized the Secretary of State to have their names printed on the ballot to be used at the general election in November.
 

 Edwards, the contestant, alleged in his petition, and argued before the court and in his brief, that in a case like this, where there are two offices to be filled and there are three candidates for those offices, the Committee is not authorized, under the law, to declare two of the candidates nominated; that only one can be nominated because only one can receive “the greatest number of votes”.
 

 In construing this provision of the statute a strict adherence “to the niceties of grammar rules” would compel us to say that in a case like this only one candidate could receive “the greatest number of votes” and therefore the Committee could declare the nomination of only one candidate. But we are not held bound to such strict rules. To the contrary, it is our duty to discover, if possible, the intent of the lawmakers and the “true meaning of the -law”. The Civil Code lays down the following rules for the “Construction of Laws”:
 

 “Art. 14. Usual Sense Gives Terms. The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.”
 

 “Art. 16. Context. Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning.”
 

 “Art. 18. Reason and Spirit. The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.”
 

 Applying these prescribed rules for the “Construction of Laws”, the “true meaning” of this law is easily discovered. The intent of the lawmakers is not “dubious”. “Considering the reason and spirit of it”, it clearly appears that what this law means is that in a case of this kind the Committee shall declare “the nomination” of “the person, or persons,” who receive a larger number of votes than the others. The addition of the words “or persons” in the text after the word “person” shows that it was intended that more than one candidate might be certified as a nominee.
 

 
 *635
 
 In cases where no' candidate receives a clear majority of the votes polled, there can be no nomination because the law requires that to be nominated in the first primary a candidate must receive a majority of the votes cast for the office. State ex rel. Dobbins v. McDermott, 155 La. 211, 99 So. 41.
 

 We find no merit whatever in plaintiff’s contention that the Committee should order a second' primary. The sole purpose of primary elections is to nominate candidates to be supported in the general election by the party calling the primary election. In this case, there were two candidates to be nominated, and two candidates, Judge Hood and Judge Pickrel, were nominated according to law.
 

 For the reasons assigned, the judgment appealed from, sustaining the defendants’ exceptions of no cause and no right of action and dismissing plaintiff’s suit, is affirmed ; plaintiff to pay all costs.
 

 PONDER, J., concurs in the decree.