388 So.2d 836 (1980)
Samuel L. LIEBER, Plaintiff-Appellant,
v.
Durward RUST, Defendant-Appellee.
No. 14249.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
Rehearing Denied September 29, 1980.
*837 Kennedy, Goodman & Donovan by Frank S. Kennedy, Rellis P. Godfrey, Shreveport, for plaintiff-appellant.
Hargrove, Guyton, Ramey & Barlow by Joseph L. Hargrove, Jr., Joseph L. Shea, Jr., Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied September 29, 1980.
FRED W. JONES, Judge.
Samuel L. Lieber filed suit to enjoin Durward Rust, an adjoining lot owner in the Willow Ridge Subdivision, Shreveport, Louisiana, from completing construction of a pier and boathouse on Cross Lake and to compel removal of the portion already constructed. From a judgment rejecting his demands for a permanent injunction and a mandatory injunction, plaintiff appealed, contending in substance that the trial court erred in the following respects:
(1) In holding that the subdivision restrictions did not prohibit the construction of defendant's pier and boathouse.
(2) In holding that the proposed location of defendant's pier and boathouse did not violate Ordinance No. 40 of 1964 of the City of Shreveport.
(3) In refusing to hold that plaintiff had a servitude of view which was obstructed by defendant's pier and boathouse.
(4) In refusing to hold that miscellaneous civil code articles prohibited the construction of defendant's pier and boathouse.
We affirm the judgment.
The Willow Ridge Subdivision, Unit 2, was accepted by the City of Shreveport in *838 1975 and a plat thereof was filed in the conveyance records of Caddo Parish, Louisiana, together with a "Declaration of Covenants, Conditions and Restrictions" affecting all conveyances of lots in the subdivision unit. These lots bordered on Cross Lake, with the lines of each lot extending on the lake side to the 172 foot contour line which is the point at which the City of Shreveport's ownership of the bed of Cross Lake begins.
Lieber acquired Lot 1 of the subdivision unit in 1975. Rust bought Lot 2, lying to the south of and adjoining Lieber's lot, in 1976. Subsequently, Rust purchased a strip south of and adjacent to his lot, described as 35 feet off of Lot 3.
In August 1978 Rust secured a permit from the Cross Lake Patrol of the Shreveport Department of Public Utilities for the construction of a pier and boathouse on the lake. The location of these proposed improvements was staked out by the Patrol Superintendent. Construction began, but was halted when this suit was filed.
In denying plaintiff's demands for injunctive relief, the trial judge concluded that the pertinent subdivision restrictions do not apply because they are too vague to be enforceable; that the section of the city ordinance dealing with the location of piers on Cross Lake is so ambiguous that its interpretation must yield to administrative practice; and that there is no authority for the issuance of an injunction to protect a right to a scenic view.
We now discuss the substantial legal issues raised by this appeal.
Applicability of Subdivision Restrictions
The record shows that Rust's proposed pier and boathouse are located below the 172 foot contour line, in the bed of the city-owned Cross Lake, entirely off the property comprising Willow Ridge, Unit 2.
However, appellant argues that appellee has violated subdivision restrictions[1] because he did not first submit his plans to the Architectural Control Committee for approval as to harmony of external design and location in relation to surrounding structures. It is his contention that these are both "building" and "use" restrictions as explained in Smith v. DeVincent, 322 So.2d 257 (La.App. 2d Cir. 1975). He urges that these restrictions prohibit the "use" of one's lot in the subdivision for access to Cross Lake for the "building" therein of a pier and boathouse unless the plans are first approved by the described committee.
In the Smith case the owner of a subdivision lot sought to enjoin other lot owners in the subdivision from placing and maintaining mobile homes on their respective lots. This court found that the restriction in question manifested the subdivider's intent that the residential structure on each lot be something other than a self-contained mobile home, and classified this as a "use" restriction. Obviously, that case is factually distinguishable from this case.
Dealing directly with the question presented to us, it was held in Begnaud v. Hill, 109 So.2d 562 (La.App. 1st Cir. 1959) that the purchasers of lots in a subdivision covered by restrictive covenants could not enforce those covenants against property which their vendor had specifically excluded from the subdivision. Also see Lillard v. Jet Homes, Inc., 129 So.2d 109 (La.App. 2d Cir. 1961).
Consistent with this jurisprudence, we hold that the restrictions imposed on the *839 lots in Willow Ridge Subdivision, Unit 2, do not apply to city-owned property in the bed of Cross Lake. Consequently, Rust did not violate those restrictions by starting the construction of his pier and boathouse without first securing approval from the subdivision Architectural Control Committee.
This holding pretermits the necessity of our considering whether the involved restriction is too vague to be enforceable.[2]
However, in connection with this question the appellant argues that Rust is estopped to urge the invalidity of the building restrictions pertaining to piers and boathouses since he purchased his property subject to those restrictions, serves as a member of the Architectural Control Committee for the subdivision and abided by those restrictions in constructing his dwelling in the subdivision. The answer to this argument is that Rust is urging the inapplicability of the restrictions and not their invalidity.
In addition, on the question of estoppel, there are three necessary elements before this doctrine becomes applicable: a representation by conduct or words, justifiable reliance and a change in position to one's detriment because of the reliance. See Wilkinson v. Wilkinson, 323 So.2d 120 (La.1975). We find none of those elements present in this case.
For these reasons we find no merit in the plea of estoppel.
Violation of City Ordinance
Ordinance No. 40 of 1964 of the City of Shreveport grants to the City Department of Public Utilities "full supervision and control of all improvements and developments on Cross Lake water reservoir and within the contour line, below the 172 foot mean gulf level," including the authority to issue permits for construction on the lake bed. Pertinent portions of Section 3 of the cited ordinance provide:
"The property owners adjacent to Cross Lake shall have the exclusive right to the use of the area which abuts their property and lies between the 172 foot contour line and the water level of Cross Lake, providing that all rules and regulations, restrictions and reservations, including waiver of any claims against the City of Shreveport, Louisiana, for injuries or damages, are agreed to by said property owners.
"Piers, boat houses and docks for the exclusive use of their owners will be authorized within the 172 foot contour line by permit only. These structures will be subject to the approval of the Department of Public Utilities and must be maintained in good repair.
. . . . .
"Piers and wharves, stationary and/or floating, and other facilities extending into Cross Lake reservoir will be limited to a maxium (sic) total length of not more than 300 feet, perpendicular to the water line, from the 172 foot contour line.
. . . ."
The trial judge ascertained that the Lieber and Rust lots bordered on a concave or "inside curve" of the lake. Since it is not possible to determine what is "perpendicular" to a curved water line, he reasoned that this particular language contained in the ordinance is ambiguous. Therefore, he admitted the testimony of former Commissioner of Public Utilities (1962-1970), L. Calhoun Allen, Jr. "to determine the intent of the ordinance." Finding that this did not clear up the ambiguity, the trial judge concluded:
"It is my considered opinion that when the entire area is considered by this aerial photo rather than the single picture of the location of plaintiff's property as judged by the interior lot lines, the solution proposed and put into practice by the City of Shreveport seems reasonable, or at least as reasonable as the plan submitted by plaintiff as P-15."
Interestingly enough, neither appellant nor appellee agreed with the trial judge that the cited section of the ordinance is ambiguous.
*840 Appellant argues that under the quoted city ordinance a subdivision lot owner is granted the exclusive use of that area abutting his lot lying between the 172 foot contour line and the actual water level of Cross Lake, with the side boundaries of the exclusive use area determined by extending side lot lines to the water level; that this exclusive use is limited to the construction of piers and boathouses in accordance with the instructions in the ordinance; that the direction of the pier is to be perpendicular to the 172 foot contour line since the water level follows the surrounding land; that to permit construction of piers in a direction other than perpendicular to the 172 foot contour line would invade the exclusive use area of adjoining property owners; and that the court should accept the testimony of former Commissioner Allen who stated that the intent of the ordinance was to prohibit the building of piers projecting at the angle of appellee's into Cross Lake.
On the other hand, appellee takes the position that the section of the ordinance containing the clause "perpendicular to the water line" simply defines the manner in which the maximum total length of the pier is to be measured and does not purport to fix a direction for pier construction into the lake, since a constantly changing water line would render this impractical; that the established practice of city employees to locate piers in such a manner as to accommodate all interested parties is a reasonable implementation of the ordinance; that the "exclusive use" area is often nonexistent since the water level is frequently up to the 172 foot contour line; that this "exclusive use" area, even when in existence, is subject to the right of the City to grant permits for the construction of piers and boathouses; that since the language of the ordinance is unambiguous, testimony concerning its meaning was inadmissible; and, even if the quoted language is ambiguous, former Commissioner Allen could only relate that which factually transpired at the time of the enactment of the ordinance rather than give an opinion as to its meaning.
First, with reference to appellant's contention that his "exclusive right" area was transgressed by appellee's pier construction, it should be noted that under the terms of the subject ordinance the "exclusive right" area is restricted to the land abutting one's lot and lying between the 172 foot contour line and the water level. In this case appellee's pier was to extend from his retaining wall out into Cross Lake. The record, including an aerial photograph of the involved lake property, indicated that appellee's retaining wall also marked the water line or water level. Consequently, there was no evidence that appellee's proposed construction infringed upon any of appellant's "exclusive right" area.
Next, we agree with the trial judge that the paragraph of Ordinance No. 40 of 1964 which provides that piers extending into Cross Lake will be limited to a maximum "total length of not more than 300 feet, perpendicular to the water line, from the 172 foot contour line" is ambiguous. It is impossible to determine from this language whether the City of Shreveport is purporting to simply regulate the length of piers or whether it also contemplates specifying the direction of those piers into the lake. If the latter interpretation is accepted, how does one lay out a pier which runs perpendicular or at a right angle from a curved water line, as obtains in this case?
When a law is ambiguous we are mandated by La. Civil Code Art. 18 to consider "the reason and spirit of it, or the cause which induced the Legislature to enact it."
The jurisprudence of this state recognizes that statutory rules of construction of laws are as applicable to municipal ordinances as to state statutes. Louisiana Television Broadcasting v. Total C.A.T.V., 341 So.2d 1183 (La.App. 1st Cir. 1977); Gautreau v. Board of Electrical Examiners, 167 So.2d 425 (La.App. 1st Cir. 1964).
The following pertinent comments concerning interpretation of an ambiguous statute are found in Authement v. Davidson, 366 So.2d 986 (La.App. 1st Cir. 1978):
"It is not one individual legislator who enacts a statute, but the entire legislative *841 branch which acts as a whole. Thus, it is the duty of the court to ascertain the legislative intent, as a whole, in order to construe a statute, to accomplish the purposes for which it was enacted....
"... It is not the opinion of the witness-legislator as to what the legislature intended that is admissible, but rather the factual evidence considered by the legislature in enacting legislation..."
Also see Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir. 1977).
In view of this jurisprudence the testimony of former Commissioner Allen giving his interpretation of the ambiguous language in the ordinance was inadmissible. However, since the trial judge stated that this testimony failed to resolve the ambiguity, appellee was not prejudiced.
Since we are without the benefit of admissible evidence concerning the legislative history of the ordinance in question, we now turn to another source for statutory interpretation-the construction consistently given to the language by those charged with the duty of the administrative application. Our authority for this approach is the holding of Ouachita Parish School Board v. Ouachita, 362 So.2d 1138 (La.App. 2d Cir. 1978) that:
"The doctrine of contemporaneous construction is a well recognized tool of statutory interpretation. It provides that when an administrative body has over a long period of time placed an interpretation upon a legislative enactment, the interpretation of said body is entitled to great weight in the determination of the meaning of the legislative enactment."
Illustrative of prior cases recognizing this principle of statutory construction are Smith v. City of Alexandria, 300 So.2d 561 (La.App. 3rd Cir. 1974); Gautreau v. Board of Electrical Examiners, supra; Hester v. Louisiana Tax Commission, 227 La. 1022, 81 So.2d 381 (1955).
As previously explained, Ordinance No. 40 of 1964 vested in the Shreveport Department of Public Utilities supervision over Cross Lake, including control over the location of piers and boathouses. After adoption of the ordinance applications for permits to construct improvements of this nature in the lake were submitted to the Superintendent of the Cross Lake Patrol. Upon his approval the permits were transmitted by him to the Commissioner of Public Utilities for review and either confirmation or rejection.
R. W. Calhoun, Superintendent of the Cross Lake Patrol, testified that he had issued some 50 permits for construction of piers and boathouses in the lake. The principal guideline for location of these improvements was the administrative goal of attempting to "accommodate everybody on the lake-depending upon the shape of his lot." As Calhoun pointed out, a number of the lots bordering on the lake had curved boundary lines. Running piers straight out into the lake from these lots would prevent access to the water from other lots. Therefore, the comprehensive scheme considered when locating each pier revolved around the effort to assure equal access to the lake by all lots bordering on the lake bed. Calhoun stated that this established administrative practice was followed when he approved the location of the proposed pier and boathouse for appellee.
Billy J. Guin, who as Commissioner of Public Utilities was Calhoun's superior, corroborated his employee's testimony relative to the described administrative practice which was designed to "accommodate all lot owners in the area." According to Guin:
"The criteria that I used, and the concept of this design, was to try to create equity as between the owners of the adjacent lots around that cove. Each one should have access to the water, whereby he could build a pier."
Even former Commissioner Allen acknowledged that he had approved a number of permits in which piers were not perpendicular to the water line or contour line because of the shape of the lot lines bordering the lake.
*842 We find, therefore, that those city officials and employees charged with the supervision of Cross Lake under Ordinance No. 40 of 1964 had consistently construed the clause containing the phrase "perpendicular to the water line" to govern the length only of piers and not their direction. It follows, logically, that since the ordinance does not specify the direction in which a pier must extend into Cross Lake, the location of appellee's pier does not violate the ordinance. Consequently, the conclusion of the trial judge to this effect is correct.
Obstruction of Servitude of View
Appellant contends that his lot enjoys a predial servitude of view under La. Civil Code Article 716[3] (now La. CC Art. 701) which is or will be obstructed by appellee's pier and boathouse.
We find no authority for holding that the scope of a servitude of view is as expansive as appellant claims, i. e., the right to an entirely unobstructed view. However, assuming that appellant's position is correct, there is no evidence in the record to show that the claimed servitude was ever created.
Appellant concedes that the servitude of view was not established by title, but argues that it arose by "destination of the owner" under La. CC Art. 767[4] (now La. CC Art. 741). Yet, the language of the article itself militates against appellant's position. In this case it is obvious that appellant's ancestors in title never owned both the property where his lot is situated and the bed of Cross Lake on which appellee proposes to locate his pier. Therefore, his predecessors in title had no authority to establish a servitude of view in favor of appellant's lot across the alleged subservient estate, i. e., Cross Lake.
In a factually similar case, Haynes v. Smith, 85 So.2d 326 (La.App. 2d Cir. 1956), the court rejected plaintiff's contention that his view over Cross Lake was impaired by defendant's construction of a commercial boat shed with the observation that this presented "no foundation nor justification for relief either in law or fact."
For these reasons we hold that appellant has failed to prove that he is entitled to enjoin the construction of appellee's pier and boathouse because they obstruct a servitude of view.
Applicability of Miscellaneous Civil Code Articles
Appellant asserts that, if for no other reason, he is entitled to injunctive relief under the provisions of one or more civil code articles[5] in addition to the article dealing with a servitude of view.
We find no merit in this argument. First, Article 667 has been limited by the jurisprudence to the conducting of ultrahazardous activities. See Charia v. Stanley, 359 So.2d 291 (La.App. 4th Cir. 1978); Hero Lands v. Texaco, 310 So.2d 93 (La.1975). The article is, therefore, inapplicable to this case.
*843 Next, Article 673 was repealed in 1976, some time before appellee began construction of his pier. It is also obviously inapplicable.
Last, appellee's pier does not constitute a "projection beyond the boundary of his estate" within the meaning of Article 697. Consequently, this article is also inapplicable.
Conclusion
For the reasons set forth, we affirm the judgment of the trial judge at appellant's cost.

ON APPLICATION FOR REHEARING
Before PRICE, MARVIN, JASPER E. JONES, and FRED W. JONES, JR., JJ.
PRICE, Judge, dissenting.
I respectfully dissent from the refusal to grant a rehearing in this matter. The original opinion of this court holds that a developer of lakeside property cannot impose restrictive covenants to control construction of piers and boathouses extending into the publicly owned waters adjacent to the subdivision. This ruling will adversely affect the orderly development of waterfront subdivisions and is not in the best interest of the public.
The Begnaurd and Lillard cases cited as support for this holding are not analogous as they do not concern the use of adjacent public property by subdivision lot owners, but to the contrary were concerned with the power of a subdivider to impose restrictions on other privately owned property which was excluded from the tract being subdivided. The distinguishing factor is that the defendant lot owner in this instance derives whatever right he has to use of the lakefront water belonging to the public solely through his ownership of abutting property.
Section 9 of the subdivision restrictions in question clearly require written approval from the Architectural Control Committee over and above compliance with the appropriate ordinances of the city of Shreveport before any construction of a pier or boathouse is extended from a lot into the lake.
No such approval was sought in this instance. Therefore, this court should grant a rehearing to at least resolve the issue as to whether the restriction is too vague to be enforceable as held by the trial court.
NOTES
[1] No building, fence, wall, or other structure shall be commenced, erected or maintained upon the properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Architectural Control Committee, composed of three (3) or more representatives appointed by "Declarant."

Section 9. Boat Houses and Constructions Extending into the Lake: Boat houses, fishing piers and other construction extending into Cross Lake shall be permitted to exist on, from, or connected to any lot with prior written approval of the Architectural Control Committee subject however to full compliance with all ordinances and regulations of the City of Shreveport.
[2] See Lake Forest, Inc. et al. v. Drury et al., 352 So.2d 305 (La.App. 4th Cir. 1977) and 4626 Corp. v. Merriam, 329 So.2d 885 (La.App. 1st Cir. 1976).
[3] Servitudes of view are of two kinds; one which confers the right of full view with the power of preventing one's neighbor from raising any buildings which obstruct it, and the other which gives an owner the right of preventing his neighbor from having any view or lights on the side on which their estates unite, or that he exercise these servitudes according to his title.
[4] The destination made by the owner is equivalent to title with respect to continuous apparent servitudes.

By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to two different owners.
[5] Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.

Art. 673. He who builds either above or below his soil, adjoining the property of his neighbor, is bound to build in a perpendicular line.
Art. 697 (now La. CC art. 663). No one shall build galleries, balconies or other projections on the border of an estate, so that they extend beyond the boundary line which separates it from the adjoining estate.