276 So.2d 720 (1973)
LOUISIANA INSURANCE GUARANTY ASSOCIATION
v.
Dudley A. GUGLIELMO, Commissioner of Insurance, et al.
No. 9276.
Court of Appeal of Louisiana, First Circuit.
March 19, 1973.
Rehearing Denied May 14, 1973.
Writ Refused June 28, 1973.
*721 E. Leland Richardson, Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for appellant.
Richard E. Britson and John P. Campbell, III, Baton Rouge, for Insurance Commissioner.
Before LANDRY, TUCKER and PICKETT, JJ.
LANDRY, Judge.
This appeal by plaintiff (Association) is from an adverse judgment in favor of defendant (Commissioner) rendered in Appellant's declaratory action for judicial interpretation of Appellant's liability for a "covered claim" as defined in LSA-R.S. 22:1375-1394, inclusive, known as the Insurance Guaranty Association Law (Act). The trial court held that "covered claim", as used in LSA-R.S. 22:1379(3), includes claims which arose prior to September 1, 1970, the effective date of the Act. We affirm.
Appellant's chief complaint is that the trial court's interpretation gives the Act retroactive effect which violates Federal and State Constitutional provisions prohibiting laws which impair contractual obligations or disturb vested rights.
The express purpose of the Act, as stated in Section 1376, is to provide a mechanism for payment of covered claims under certain insurance policies to avoid excessive delay in payment, and prevent financial loss to claimants or policyholders because of the insolvency of an insurer. Additionally, the Act seeks to assist in the detection and prevention of insurer insolvencies, and to provide a means to assess the cost of the protection it affords among insurers.
*722 The scope of the Act, as established in Section 1377, encompasses all kinds of direct insurance except life, health and accident, title, disability, mortgage guaranty and ocean and marine insurance.
Section 1380 creates the Association as a nonprofit, unincorporated legal entity composed of all insurers defined as "member insurer" in Section 1379. A member insurer is defined in Section 1379(5) as any insurer who writes insurance within the ambit of Section 1377, and who is licensed to transact insurance in this state. Section 1381 provides for a board of directors to govern the Association's affairs and defines its powers and duties.
In pertinent part, the Association's powers and duties are defined in Section 1382(1), (a) and (b), as follows:
"(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency, or arising after such determination but prior to the first to occur of the following events: (1) expiration of thirty days after the date of such determination of insolvency, (2) expiration of the policy, or (3) replacement or cancellation of the policy at the instance of the insured if he does so within thirty days of the determination, but such obligation shall include only that amount of each covered claim, except return premiums, which is in excess of one hundred dollars and is less than fifty thousand dollars, nor shall a claim for the portion of unearned premiums in excess of seven hundred and fifty dollars be allowed. Notwithstanding the foregoing, the association shall pay the full amount of any covered claim arising out a workmen's compensation policy. In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.
(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." (Emphasis by the Court.)
Assessment to insurers of the amount required to pay the Association's obligations is authorized pursuant to Section 1382(1), (c).
A covered claim is defined in Section 1379(3), as follows:
"(3) `Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. `Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." (Emphasis by the Court.)
An insolvent insurer is defined in Section 1379(4) as:
"... (a) an insurer authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred and (b) determined to be insolvent by a court of competent jurisdiction."
In Section 1394, it is provided the effective date of the Act shall be September 1, 1970.
A liberal construction of the Act is mandated by Section 1378, which recites:
"This Part shall be liberally construed to effect the purpose under section *723 22:1376, which shall constitute an aid and guide to interpretation."
Following the Act's effective date, two of the Association's members, United Bonding Insurance Company and Home Owners Insurance Company, were judicially declared insolvent. Included in the outstanding unpaid claims against said insurers were some that arose prior to September 1, 1970. The pivotal issue is the Association's liability vel non for those claims which arose before September 1, 1970. Appellant concedes liability for all claims arising subsequent to September 1, 1970. Appellant also concedes the constitutionality of the Act, but argues that the interpretation given by the trial court renders such application unconstitutional.
In concluding that covered claims include those which arose prior to September 1, 1970, the lower court reasoned that the legislature had not expressly provided that September 1, 1970, bore any relation to the time when a covered claim could arise, which the legislature could easily have done if it so desired. In effect the court found that the date September 1, 1970, as used in the Act, relates only to the time of insolvency, which alone determines the Act's applicability. Additionally, the lower court found that the Act, as interpreted, does not impair contractual obligations or disturb vested rights because the only contracts involved are insurance contracts by insurers who become insolvent. The lower court also noted that even before insolvency occurs, a claimant has an action under his policy which action is contractual in nature, but that this circumstance alone does not impose liability on the Association. It does, however, according to the trial court, represent a potential liability of the Association which matures or accrues upon a determination of insolvency which must postdate September 1, 1970. When it accrues, the liability of the Association is statutory, not contractual. In effect, the trial court reasoned that, upon a determination of insolvency, the Association's statutory liability replaces the contractual obligation of the insolvent insurer. Finally, the trial court held that since the Association's liability can arise only after the effective date of the Act, the Act is prospective in operation, consequently the decreed application cannot impair contractual rights or disturb vested interests.
The Association alleges numerous specifications of errors which may be summarized as follows: (1) The trial court correctly held the Act prospective in application, but nevertheless gave it retroactive effect in holding that covered claims include those which arose prior to the Act's effective date; (2) the trial court erred in holding that the mere existence of a claim on September 1, 1970, does not give rise to the Association's liability, but that such liability results from subsequent insolvency alone, and (3) the lower court erred in not holding that both the claim must arise and the insolvency occur subsequent to September 1, 1970, and in so failing, applied the Act retroactively in violation of La.Const. Art. 4, Sec. 15, U.S.Const. Art. 1, Sec. 10, LSA-C.C. art. 8, and LSA-R.S. 1:2.
The question is one of statutory interpretation to which the following rules apply:
The universal and most effective way of determining the true meaning and intent of a doubtful or ambiguous statute is to consider its reason and spirit, or the cause which prompted its enactment by the legislature. LSA-C.C. art. 18; Gautreau v. Board of Electrical Examiners, La.App., 167 So.2d 425.
The court's objective in construing a statute is to ascertain the legislative intent and interpret the law so as to give it the meaning the lawmaker obviously intended, and not to construe the legislation so rigidly as to give it a preposterous or strange meaning. State v. Seals, 255 La. 1005, 233 So.2d 914.
Statutes must be given a reasonable interpretation. Labit v. Terrebonne Parish School Board, La.App., 49 So.2d 431.
*724 In contending that the Act in question may not be given retroactive effect, the Association cites and relies upon the following well established rules and statutory provisions governing statutory interpretation:
No section of the Louisiana Revised Statutes may be construed to be retroactive unless it is expressly so provided. LSA-R.S. 1:2.
Laws are presumed prospective in effect, not retroactive. State ex rel. Tulane Homestead Association v. Montgomery, 185 La. 777, 171 So. 28; State v. Alden Mills, La.App., 8 So.2d 98.
If the language used by the legislature does not clearly show intent that a statute should have retroactive effect, the statute must be construed to operate prospectively only. Long v. Northeast Soil Conservation District of La., 226 La. 824, 77 So.2d 408.
The Association also cites and relies upon Smith, Superintendent of Insurance v. Ohio Valley Insurance Society, 27 Ohio St.2d 268, 272 N.E.2d 131 (Ohio Supreme Court), which involved interpretation of a statute virtually indistinguishable from our own. The Ohio statute contained an effective date of September 4, 1970. The Supreme Court of Ohio first found that defendant Society was liable only for covered claims, and then concluded "... the definition of `covered claim' does not include claims in existence before September 4, 1970. The definition of `covered claim', as a matter of English grammar, is in the present tensenot the past tense. The statute speaks of an unpaid claim `which arises'not one `which arose'. It does not include `unpaid claims' of any insurance policyonly those as to which the provision of R.C. Chapter 3955 `apply'. It speaks, not of a claimant who `was' a resident of Ohio at the time of the insured event, but of a claimant who `is' a resident of Ohio at such time." The Ohio court further noted that "A statute, employing operative language in the present tense, does not purport to cover past events of a similar nature."
The statute in question was enacted for the express purpose of protecting the public against financial loss to claimants or policyholders because of insolvency on the part of insurers. To achieve this desirable purpose, the Association was created as an instrument whereby the economic loss, which would otherwise result, would be shared by the holders of policies in companies which remain sound, and against whom the members of the Association may assess its cost of operation. Obviously the public interest is considerable. To achieve this most desirable result, the statute itself commands that it shall be liberally construed.
We concede the correctness of the principles relating to retroactive statutes cited and relied upon by the Association. We find, however, they are inapplicable herein because the interpretation given the Act by the trial court does not render it retroactive.
Well established jurisprudence holds to the effect that a statute is not rendered retroactive in application merely because it draws upon antecedent facts for its operation. United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Cox v. Hart, 260 U.S. 427, 43 S.Ct. 157, 67 L.Ed. 332; Reynolds v. United States, 292 U.S. 443, 54 S.Ct. 800, 78 L.Ed. 1353.
In Trans-Missouri, above, the U.S. Supreme Court held that retroactive effect is not given a statute making combinations in restraint of trade illegal merely because the statute is applied after its passage to a continuation of a pre-existing contract.
Cox v. Hart, involved a congressional act governing the rights of persons homesteading and possessing unsurveyed desert lands belonging to the Federal Government. Although the act forbids entry of *725 unsurveyed lands, it recognized the rights of possessors who had entered such lands prior to the effective date of the act in question. The court held that the act referred to persons who occupied a certain status when the act became effective. The court also held that the act was not made retroactive merely because it drew upon certain antecedent facts for its applicability.
In Reynolds v. United States, above, a veteran sued to recover sums deducted from his government pension for board furnished from 1911 until 1930. In July, 1926, Congress passed an act declaring veteran's pensions exempt from deduction for board furnished while a veteran was hospitalized in a governmental facility. In rejecting the government's contention that to allow recovery for the value of board furnished before the act became effective would give the statute retroactive effect, the court reiterated the principle that a statute is not rendered retroactive merely because the facts upon which its subsequent application depends, or some of them, antedate the law's enactment.
This same principle was followed by our own Supreme Court in State v. Alden Mills, 202 La. 416, 12 So.2d 204, which concerned a suit filed by the State on December 8, 1941, to collect corporation franchise taxes due for the years 1933 through 1937, inclusive. Defendant interposed as a defense the provisions of La.Const. Article XIX, Section 19, adopted November 8, 1938, providing that taxes shall prescribe in three years from the 31st day of December, in the year in which they become due. The lower court ruled that as to taxes due before the effective date of the amendment, prescription did not run until three years after the effective date, namely, December 10, 1941. The Supreme Court held, however, that the constitutional objection against impairment of contracts did not apply because the provision dealt with an indebtedness owed the State. The court also held that to give the provision the effect of barring collection of taxes due more than three years before the effective date of the act does not give it retroactive effect. In support of this latter determination, the court cited language from Reynolds, above, to the effect that a statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, antedate the statute's enactment.
In State v. Alden Mills, above, the court also held that in declaring that all taxes "shall" prescribe in three years, use of the word "shall" did not show intent to bar application of the provision to suits filed within three years of its effective date. The court noted that if the intent was to limit application to taxes coming due after the effective date of the amendment, the framers would have used the words "shall become due" or the past tense "became due" instead of "are due". The court concluded choice of the words "are due" was made advisedly in order that the amendment apply to taxes already more than three years past due when the amendment became effective.
We disagree with the reasoning in Smith v. Ohio Valley Insurance Company, above, which held in effect that the word "arises" implies the present tense only.
Our own jurisprudence holds that in interpreting a statute, the courts are not bound by strict grammatical rules, but rather have the duty to determine true legislative intent. Edwards v. Daigle, 201 La. 622, 10 So.2d 209.
We likewise find the phrase "arises out of", as used in the definition of covered claims in this instance, relates not to verb tense or the time the claim arises, but rather to the source and nature of the claim. In this regard, we note that the last sentence of the definition of "covered claim" specifically excludes claims of certain designated types without reference to past or future tense. Construed together, we deem these provisions indicative of legislative *726 intent to categorize the class or nature of claims covered, and not to fix the time when claims shall arise as a condition precedent to their falling into the classification of covered claims. Further support for this conclusion is found in Section 1382(1)(a), which recites: "The association shall be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency,...." Thus, liability of the Association is not limited to claims arising after the effective date of the Act, but is extended to any claim antedating insolvency. To hold the contrary could lead to the absurd result that, in the case of an insurer being adjudged insolvent on September 2, 1970, only claims arising on that date would be deemed covered claims. This would not result in the liberal interpretation required by the Act, but would place a most restrictive meaning on the statute contrary to its clear mandate.
We hold the Act intends that the decreeing of an insurer insolvent after its effective date is the sole operative factor upon which the Association's liability attaches. We also find the Act intends that when such liability accrues, it attaches to the status of the insolvent insurer as it then exists. Claims outstanding at the time insolvency is decreed merely determine in part the liability to which the Association is subjected. Nothing in the Act suggests that covered claims must arise after the Act's effective date. It suffices that the claim exists when insolvency is decreed, irrespective of whether the claim originated before or after the Act became effective. Claims existing on the Act's effective date, and also those arising thereafter, represent merely a potential liability of the Association. Neither class of claims become the liability of the Association until and unless an insurer is decreed insolvent. The existence of claims on the Act's effective date does not determine liability vel non, anymore than does a claim which arises subsequently thereto. Claims antedating the effective date constitute only a portion of the facts upon which the Act's subsequent action depends.
The self-contained mandate of liberal construction demands interpretation of the term covered claims to include claims arising before September 1, 1970. Any other interpretation would produce absurd results not intended by the Act. That such a requisite antedated the Act's effective date does not render the Act retrospective in operation. The Act operates prospectively only because, by its own terms, it applies solely to insolvencies decreed subsequent to the date it becomes effective. The instant case satisfies that vital requirement.
The avowed purpose of the Act is protection against loss of those persons having claims against designated types of insurers who are decreed insolvent subsequent to September 1, 1970. First, we must construe the Act in the light of its announced purpose which we deem to be of vast public interest. In so doing, we must give the Act the meaning and scope the lawmakers intended, and not construe its terms so rigidly as to give it a preposterous or odd meaning. We must accord the Act a reasonable meaning in the light of its purpose and by its own terms, we are constrained to a liberal interpretation.
With the foregoing principles as a guide, we find that in describing a covered claim as one which "arises out of and is within the coverage ... of an insurance policy to which this Part applies....", the legislature intended the word "arises" to relate solely to the source of the claim, and not its time of inception. To hold otherwise would give the Act a restricted or odd meaning contrary to rules of statutory interpretation and in express contravention of the mandate for liberal construction contained in the Act itself.
In so construing subject Act, we find that it neither disturbs vested rights nor impairs the obligations of contracts.
To fall within the constitutional prohibition against divestiture of vested *727 rights, a law must create new obligations, impose new duties or attach new disability to a contract in existence when the law becomes effective. Henry v. Jean, La.App., 112 So.2d 171.
Obligation of contract within the intendment of the constitutional proscription against impairment thereof concerns the means which at the time of its creation, the law allows for its enforcement. Louisiana ex rel. Nelson v. Police Jury of Parish of St. Martin, 111 U.S. 716, 4 S.Ct. 648, 28 L.Ed. 574.
Nothing herein abridges any right of a claimant. On the contrary, claimants are afforded a new remedy which redounds to their benefit. Neither does the Act create any new obligation or exposure, either in character or amount, upon any Association member under its own policies. Nor does the Act lessen even to the slightest degree, the protection afforded under a policy issued by an Association member.
The obligation imposed by the Act is totally new. It is independent of and unrelated to any contractual right in existence on the effective date of the statute.
Assuming, purely for argument's sake, some impairment of contractual rights resulted herein, the constitutional ban relied upon by the Association is not absolute. Ogden v. Saunders, 12 Wheat. 213, 25 U.S. 213, 6 L.Ed. 606.
The Act was obviously intended to provide an additional remedy for enforcement of claims against insolvent insurers and, as such, serves a vital public service.
It is well established that the economic interests of a state may justify the exercise of its protective power despite interference with existing contracts. Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413. In determining whether such legislation violates the impairment of contract clause of the Federal Constitution and state constitutions, the inquiry is not whether it affects contracts incidentally, directly or indirectly, but whether it is designed to produce a legitimate end and whether the measures taken are reasonable and appropriate to the end. Blaisdell, above. The rationale of the rule in Blaisdell is the increasing appreciation of public wants, and of the necessity of finding ground for a rational compromise between individual rights and general public welfare.
In this instance, we find the means admirably and reasonably suited to the public need sought to be met.
The judgment of the trial court is affirmed; all costs of these proceedings are to be paid by the Association.
Affirmed.