LOBRANO, Judge.
The issue to be determined in this litigation is whether or not plaintiff’s judgment against an insolvent insurer is a covered claim within the meaning of Louisiana’s Insurance Guaranty Act (LIGA).
On February 24, 1985 Rhonda Younce was a guest passenger in a vehicle driven by her husband, David Younce. The Younce vehicle was involved in an accident with a vehicle operated by Eric Loudrake. As a result of the accident Younce, on March 17, 1989, obtained a judgment against her husband and his uninsured motorist carrier, Champion Insurance Company, as well as the adverse driver, Loudrake. Champion was also the liability insurer of Loudrake.
Sometime in June of 1989, Champion was declared insolvent. On September 1st and 18th, 1989 Younce advised LIGA of her judgment against Champion and requested confirmation that it would be paid. On October 10, 1989 LIGA responded that it would honor the judgment, excluding interest and court costs. On January 2, 1990, LIGA advised Younce that its previous determination was in error and that her judgment was not a covered claim because Champion was not authorized to do business in this state as of the accident date. LIGA also informed Younce that Champion was not authorized until March 11, 1985.
Younce filed a motion to substitute LIGA as a defendant and sought enforcement of her judgment. The trial court denied the motion without reasons. Younce perfects this appeal. She sets forth three arguments. First, she asserts that her judgment is a covered claim within the meaning of La.R.S. 22:1379(3); second, she asserts that LIGA is now estopped from paying the claim because of its initial correspondence; and third, she argues that, irrespective of the “covered claim” question, LIGA breached an independent duty owed her.
The following pertinent dates necessary in our determination are undisputed.
1) David Younce’s policy with Champion was issued October 1, 1984;
2) Eric Loudrake’s policy with Champion was issued May 7, 1984;
3) The accident date was February 24, 1985;
*523 4) Champion was authorized by the Insurance Commissioner to do business in this state on March 11, 1985.
In 1970 the legislature enacted the Insurance Guaranty Association Law (the Act). Its purpose is “to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to avoid financial loss to claimants or policy holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.” La.R.S. 22:1376. The Act is administered by an unincorporated association known as the “Insurance Guaranty Association.” La.R.S. 22:1380. Its powers and duties include the payment of covered claims as defined by the Act, and the assessment of necessary amounts against the member insurers to fund those payments. La.R.S. 22:1382. All insurers licensed to do business in this state and who have, since September 1, 1970, written at least one policy to which the Act applies are members of LIGA and subject to being assessed. La.R.S. 22:1379(5).
Among the duties of LIGA is the obligation to pay those claims covered by the statute. Specifically, La.R.S. 22:1382A(l)(a) states:
“The association shall:
(l)(a) Be obliged to the extent of the covered claims existing prior to the determination of the insurer’s insolvency....
* % * * * *
but such obligation shall include only that amount of each covered claim
(emphasis added)
The definition of “covered claim”, pertinent to the issues in this case, is defined in La.R.S. 22:1379(3)(a) as follows:
“ ‘Covered claim' means an unpaid claim ... which arises out of and is within the coverage ... of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970 and:
(i) The claimant or insured is a resident of this state at the time of the insured event; ” (emphasis added)
An “insolvent insurer” is defined in La.R.S. 22:1379(4)(a) as:
“(i) An insurer authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred, and
(ii) Against whom an order of liquidation with a finding of insolvency has been entered by final judgment of a court of competent jurisdiction ...”
It is undisputed that, prior to Champion being authorized by the Insurance Commissioner to do business in Louisiana, the policies involved in this litigation were issued and the insured event (i.e. the accident) occurred. Younce argues that the statute requires a liberal interpretation, “to protect claimants and policy holders and to advance their interest rather than the interest of the Association.” Senac v. Sandifer, 418 So.2d 543 (La.1982). She argues that the operative factor in determining whether LIGA affords coverage is the insolvency date of the insurer. Citing Louisiana Insurance Guaranty Association v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir.1973), writ denied, 279 So.2d 690 (1973), in support of her position, Younce asserts that LIGA’s liability is not limited to claims arising after the Act’s effective date, but is extended to claims antedating insolvency.
In rebuttal LIGA relies on the plain wording of the “covered claim” definition. It urges that the term “insolvent insurer” as defined in the Act precludes plaintiff’s claim from being a “covered claim”. We agree.
While we recognize the Act’s mandate of liberal construction to effect its purpose, we cannot ignore its plain and unambiguous language. See Ursin v. Ins. Guaranty Association, 412 So.2d 1285 (La.1982). In order to be a “covered claim” there must be an unpaid claim arising out of an insurance policy issued by an insurer who becomes an insolvent insurer after September 1, 1970. In order to be an “insolvent insurer” the Act clearly states that the insurer, besides being declared insolvent, must have *524 been authorized to transact business in the State when the policies in question were issued or the insured event occurred. Stated another way, the Act does not apply to claims arising under insurance policies issued when the insurer was not duly authorized to transact business by the Commissioner of Insurance unless the insured event occurred after the Commissioner’s authorization.
We believe this interpretation is consistent with the entire scheme of the Act. LIGA is authorized to assess its “member insurers” in order to fund its obligation to prevent or minimize financial loss to the policy holders of this State. The Insurance Commissioner is empowered to investigate the financial stability of the “member insurers” in order to detect and prevent insurer insolvencies. La.R.S. 22:1382; 22:1384. In order for LIGA and the Commissioner to accomplish these goals the insurer must be “member insurer.” In order to be a “member insurer” the Act requires that the insurer be authorized to transact business in the state. Thus, if an insurer is not authorized to transact business when it issues a policy, LIGA and the Commissioner have no authority to fulfill their statutory requirements with respect to that insurer. The plain wording of the Act convinces us that the Legislature never intended to afford LIGA’s protection to policies issued when the insurer was not subject to the Act’s provisions. A contrary interpretation would extend LIGA coverage to those insurers who issue policies in this State without being subjected to regulation by the State. Once the insurer is authorized by the Commissioner it is subject to assessment and State scrutiny of its financial stability.
We are aware of the Guglielmo case cited by Younce, but limit that decision to its particular facts. In that case the issue was whether LIGA would apply to claims which arose prior to September 1, 1970, the Act’s effective date, where the insurer was declared insolvent subsequent to that date. The court held that the operative factor in determining the Act’s application was the date of the insurer's insolvency. LIGA’s argument in that case was the unconstitutional retroactive application of the Act, and the interpretation of the phrase “arises out of” as used in the definition of covered claim. There was obviously no argument made that the insurer was not authorized to transact business when the policies were issued since the Act was very recent. It would have been impossible for the insurer to have received a certificate of authorization prior to September 1, 1970 because, prior to that date, it did not exist. Given the particular facts of that case, we do not consider it controlling in the instant situation.
Although Champion’s insolvency is not contested, it is clear that it was not authorized by the Commissioner when it issued the policies in question. Thus, according to the Act’s clear definition, Champion could not have been an “insolvent insurer” with respect to those policies and the claims arising from them are not “covered claims”.
Plaintiff also argues that the initial letters received by her from LIGA indicating that her judgment would be paid constitute a compromise of her claim and is enforceable as such. Alternatively, she argues that the letters estop LIGA from subsequently denying liability.
In support of her compromise argument, Younce cites Civil Code Article 3071 which defines a compromise as follows:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.”
*525 Arguably, the letters between the parties may satisfy the writing requirement, however there was no controversy between the parties to compromise. There was no “preventing or putting an end to a lawsuit” by a mutual adjustment of differences. Plaintiffs letter was a request as to whether the judgment was a “covered claim”. LIGA’s initial response, although issued in error, was affirmative. We do not construe this to be a compromise as contemplated by Article 3071.
Alternatively, plaintiff argues an estoppel theory. Equitable estoppel is voluntary conduct by one party which is relied on by the other to his prejudice or detriment. In relying on the conduct, the party’s position must be changed so that he will suffer injury. American Bank and Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 (La.1967).
There is absolutely no showing in this case that plaintiff was sufficiently prejudiced by LIGA’s initial letter as to invoke the estoppel theory. Other than being delayed a few months in seeking judicial recourse against LIGA, plaintiff has not been prejudiced.
Finally, plaintiff argues that LIGA failed in its duty to properly monitor and examine Champion’s finances, citing La. R.S. 22:1384(l)(c). This argument is without merit. La.R.S. 22:1391 grants LIGA and the Commissioner immunity “for any action taken by them in the performance of their powers and duties” under the Act.
For the foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.