[ iLABORDE, Judge.
This appeal concerns the respective rankings of LIGA, standing in the shoes of a defunct primary insurer of the vehicle driven by the tortfeasor; the excess insurer of the vehicle; and the provider of an insurance policy covering a different vehicle naming as an insured the driver of the vehicle. After reviewing the record, we find no basis for reversing the trial court’s decision.
*295 FACTS
The trial court found the facts to be as follows:
This suit arises out of an automobile accident which occurred on March 28,1987 on La. Hwy. 1163 at its intersection with La. Hwy. 1164. Douglas Jack was driving a 1977 Oldsmobile Cutlass in a southerly direction on La. Hwy. 1163, the favored roadway. As Mr. Jack approached the intersection a 1986 pickup owned by Glen Guillory and driven by A.L. Fontenot approached the same intersection heading in a westerly direction and failed to heed the stop sign, travelled into the intersection and caused a collision of the two vehicles. Passengers in the Jack vehicle were Gusta-via Jack, Olivia Jack, Lou Anna Guillory and April Guillory. This Court has previously ruled that this accident was caused by the negligence of the driver of the Guillory vehicle, one Aaron L. Fontenot.
Mr. Glen Guillory, the owner of the 1985 Chevrolet pickup truck, had purchased insurance coverage with Champion Insurance Company providing primary coverage in the sum of $10,000.00/$20,000.00 and a $90,000.00/$280,000.00 policy for a total of $100,000/$300,000 was purchased at the same agency with Interstate Fire & Casualty Company. The defendant, Aaron L. Fontenot, was living with his father and his father had a policy with Louisiana Farm Bureau Insurance Company which covered Mr. Aaron L. Fontenot as an omnibus insured.
^Plaintiffs filed virtually identical suits against defunct carrier Champion Insurance Company as primary insurer of the vehicle driven by the tortfeasor. After Champion’s demise, plaintiffs supplemented their suits to bring in Louisiana Insurance Guaranty Association in its role as the statutory successor to the insolvent carrier, against Interstate Fire and Casualty Company as the excess carrier of the offending vehicle, and against the driver’s insurer, Farm bureau.
At trial, LIGA argued that the Interstate and Farm Bureau policies “dropped down” ahead of LIGA, so that their excess coverages would become primary coverage in the face of Champion’s insolvency. The trial court disagreed, finding that the language of the Interstate policy clearly expressed its intention to be only an excess insurance carrier. Further, the court found that the Farm Bureau policy contemplated that under the circumstances found in this case it would provide coverage only in excess of both underlying policies.
LIGA appeals the trial court judgment, alleging six assigned errors:
1.
The trial court erred in finding the Louisiana Insurance Guaranty Association as the statutory successor to Champion Insurance Company afforded primary coverage.
2.
The trial court erred in finding that Interstate Fire and Casualty Company’s policy afforded excess coverage over and above Champion Insurance Company’s policy.
3.
The trial court erred in finding that Farm Bureau Insurance Company’s policy was excess to the coverage afforded by the Louisiana Insurance Guaranty Association as the statutory successor to Champion Insurance Company.
4.
The trial court erred in rendering judgment against the Louisiana Insurance Guaranty Association.
5.
The judgments awarded in favor of Gus-tavia Jack and John B. Guillory, individually and on behalf of April Guillory, were supported by the testimony and evidence presented at trial.
6.
The trial court erred in awarding court costs and legal interest against Louisiana Insurance Guaranty Association from date of judicial demand, rather than from date of insolvency.
*296 LAW
JjThe ranking of coverages as construed by the much respected trial judge is upheld. See Louisiana Insurance Guaranty Ass’n v. Interstate Fire & Casualty Co., No. 93-0911 (La. 1/14/94); 630 So.2d 759. As a consequence, there is no merit to LIGA’s first three assigned errors.
Nor can we find fault in the damage awards as set forth in the judgments complained of. Our review of the evidence contained in the record makes it obvious that the trial judge intended to award plaintiff April Guillory general damages of $2,500, plus special damages of $688.65, minus a credit of $60. As to Gustavia Jack’s award, it is clear that the court contemplated awarding her $3,500 in general damages, plus $175 in special damages; our review of the evidence makes it clear that the trial judge inadvertently confused the general damages he intended to award April Guillory. In any event, in splitting hairs so fine, it is difficult to imagine an abuse of discretion by the finder of fact.
We do, however, find merit in LIGA’s last assigned error. Although LIGA was properly taxed with interest and court costs arising after Champion’s demise, the same cannot be said of those awards arising before the company was determined to be insolvent. LIGA correctly cites LSA-R.S. 22:1379(3)(d) as authority that it should not have been held accountable for those sums. That provision in its present form provides as follows:
(d) “Covered claim” shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys’ fees and expenses, statutory penalties and attorneys’ fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.
Amended by Acts 1990, No. 105, Section 1, effective September 7, 1990 (Emphasis added). We find in the language highlighted above that the legislature clearly intended to absolve LIGA of the obligation to make certain classes of claims and creditors whole Ufor the failures of defunct carriers.
At the same time, we note that no authority exists to forgive LIGA of court costs and interest that accrue after an insurer’s insolvency. The predecessor to the current version of the definition of “covered claims” was set forth in Acts 1987 No. 172. This legislation, which was expressly stated to be remedial, applied retroactively to insurers like Champion that were declared insolvent on or after January 1, 1987, but did not exclude court costs and penalties from the definition of “covered claims.”
(3)“Covered claim” means an unpaid claim, including one for unearned premiums by or against the insured or agent, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b)
the property from which the claim arises is permanently located in this state. “Covered claim” shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.
[[Image here]]
§ 1382. Powers and duties of the association
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer’s insolvency, or arising after such determination
[[Image here]]
Section 2. This Act is declared to be remedial and shall be applicable to covered claims which arise out of the insolvency of an insurer that is determined to be insolvent by a court of competent jurisdiction on or after January 1, 1987.
Section 3. This Act shall become effective upon signature by the governor or, if not signed by the governor, upon expiration of the time for bills to become law without signature by the governor, as pro *297 vided in Article III, Section 18 of the Constitution of Louisiana.
Amended by Acts 1987, No. 172, Section 1, effective June 19, 1987 (Emphasis added).
Although the definition of “covered claim” has twice been broadened since its original enactment, most recently by Acts 1990 No. 105 to exclude from LIGA’s responsibility the reimbursement of certain items including court costs and interest, those amending Acts contain no language calling for LIGA’s immunization from post | ^insolvency costs and interest.[1]
Applying these precepts to the case before us, we accept LIGA’s assertion that the trial judge erred in taxing it with pre-insolvency court costs and legal interest arising from this litigation. Acts 1990 No. 105 clearly requires this result. Castille v. McDaniel, 620 So.2d 461 (La.App. 3d Cir.1993). On the other hand, we affirm the trial court’s imposition of court costs and interest accruing since Champion was determined to be insolvent.
DECREE
The trial court’s judgment is affirmed, except to conform its imposition of court costs and interest to coincide with the law as it relates to LIGA’s immunity for pre-insolven-cy costs and interest. Defendant-appellant LIGA to bear the costs of this appeal.
AFFIRMED AS AMENDED.

. Ironically, had the Act in question not contained language limiting its retroactive application to insolvencies occurring on or after January 1, 1987, see Louisiana Insurance Guaranty Association v. Guglielmo, 276 So.2d 720 (La.App. 1st Cir.), writ denied, 279 So.2d 690 (La.1973), or had the subsequent amending legislation contained similar language with respect to remedial intendment, our holding could very well be different. However, in the presence of several legislative acts, each containing individually distinguishing characteristics, we are required to return to the statutory rules of interpretation for guidance. These laws instruct us that no section of the Revised Statutes is retroactive unless it is expressly so stated, LSA-R.S. 1:2, and that when the wording of a section of the revised statutes is clear and free of ambiguity, its letter shall not be disregarded under the pretext of pursuing its spirit. LSA-R.S. 1:4.