341 So.2d 1183 (1976)
LOUISIANA TELEVISION BROADCASTING CORP. et al.
v.
TOTAL C.A.T.V.
No. 11001.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
Rehearing Denied February 14, 1977.
Writ Refused March 31, 1977.
W. Luther Wilson, Baton Rouge, of counsel, for plaintiff LA Television Broadcasting Corp. appellant.
*1184 Stan O. Bardwell, Jr., Baton Rouge, of counsel, for plaintiff Guaranty Broadcasting Corp. appellant.
James S. Holliday, Jr., Baton Rouge, of counsel, for plaintiff Rush Broadcasting Corp. appellant.
Hugh Holderith, Baton Rouge, of counsel, for plaintiff Surety Aetna Casualty Co. appellant.
John White, Jr., Baton Rouge, of counsel, for defendant Total C.A.T.V., Inc. appellee.
Before LANDRY, COLE and CLABORNE, JJ.
LANDRY, Judge.
Plaintiffs, Louisiana Television Broadcasting Corp., operator of VHF Television Channel 2; Guaranty Broadcasting Corp., operator VHF Television Channel 9; and Rush Broadcasting Corp., operator of UHF Television Channel 33, (Appellants) appeal from judgment dismissing their suit for declaratory judgment seeking interpretation of a franchise held by defendant, Total C.A. T.V., (Appellee), for the furnishing of cable television service in the Baton Rouge, Louisiana, area. The franchise provision in dispute deals with Appellee's alleged obligation to furnish a certain type of television installation to Appellee's subscribers. More precisely, Appellants contend the provision in question imposes upon Appellee the mandatory duty of uniformly installing switching connections to Appellee's subscribers so as to permit non-cable television reception. The trial court held the franchise provision in question is couched in conditional, not mandatory terms. We affirm.
Appellants initially filed pleadings requesting summary judgment in their favor coupled with an injunction mandating Appellee to uniformly install connections to subscribers' sets allowing non-cable television reception. Appellee concedes it does not uniformly make such connections and provides such connections only upon subscriber request. In addition to filing numerous peremptory exceptions, Appellee moved for summary judgment dismissing Appellants' demands. In subsequent pleadings, and by mutual consent, the parties converted the action into one in which both seek declaratory judgment in their favor.
It is agreed that no dispute exists to any issue of material fact involved herein. The sole issue presented is the application and interpretation of Section 8.1, Paragraph 2, of the 1972 East Baton Rouge Parish Ordinance 3833 and City of Baton Rouge Ordinance 2889, as amended by 1974 City and Parish Ordinances 3213 and 4266, respectively, which pertinently provide:
"Grantee shall make connections to subscriber outlets with switching capability to permit non-cable television reception should the subscriber desire and request such reception. The necessary switching capability shall be simple and safe to operate."
Appellee's franchise for the Community Antenna Television System for the City of Baton Rouge and Parish of East Baton Rouge, was granted pursuant to the above mentioned ordinances and is admittedly controlled thereby.
Regulations of the Federal Communications Commission permit Appellee to receive the signals of Television Channels 2, 9, 27 and 33 in Baton Rouge; Channel 26 in New Orleans; and Channel 39 in Houston, Texas. Signals from the mentioned channels are received via a "headend" system composed of a group of high antennae and a signal processing bank consisting of amplifiers, modulators and other apparata. The amplified signals are then distributed over coaxial cables known as trunk lines which are designed to maintain signal strength and which are strung upon telephone poles and sometimes underground. These trunk lines in turn transmit the signals to "feeder lines" from which connections to subscribers' sets are made by means of "tap offs" and "house drops". Feeder lines are also strung along telephone poles and underground. A cable the size of a telephone line wire is run from a feeder line to the subscriber's television set and is installed on the set where the VHF antenna screws are located. In addition to the six channels above mentioned, Appellee has *1185 added to its system six channels of Appellee's choice.
Appellee concedes it does not uniformly install on every subscriber's set the switching capability mentioned in Section 8.1, Paragraph 2, above. When a request is made by a subscriber for such a switching capability, however, Appellee furnishes the service by installing what is known as an A-B switch. To effect such a switching capability, Appellee attaches the subscriber's antenna to the A side of the A-B switch and attaches Appellee's cable to the B side of the switch. By depressing the A side of the switch, the subscriber's set receives direct VHF television signals only. On the other hand, by depressing the B side of the switch the subscriber's set receives signals from Appellee's cable system only. Because Appellee's cable is connected directly to the subscriber's VHF antenna screws, the A-B switch does not affect reception of signals from local Channel 33 which is a UHF channel. By affidavit of record, Appellee's President, Robert M. Clark, acknowledges that as of January 5, 1976, Appellee had installed a total of only 247 A-B switches on subscribers' sets. The affidavit specifically recites Appellee's contention that the disputed franchise provision does not impose a mandatory obligation on Appellee. Clark's affidavit avers that when a subscriber request is received for a switching capability covered in Section 8.1 of Paragraph 2, above, such an installation is made by Appellee.
Appellants contend the proper interpretation of the language of the ordinances, the intent of the enacting bodies, the grammatical structure of the provision in question, and public policy dictate that the ordinances must be construed to mean that a uniform installation of an A-B switch on every subscriber's set is mandatory.
Statutory rules of construction of laws are as applicable to municipal and parish ordinances as they are to state statutes. Liller v. Louisiana Board of Alcoholic Beverage Control, 59 So.2d 222 (La.App. Orleans 1952).
When a law is clear and free from ambiguity its letter is not to be disregarded under the pretext of pursuing its spirit. LSA-C.C. Article 13.
The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words. LSA-C.C. Article 14.
When a law is clear and free from all ambiguity, it must be given effect as written. Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975).
Every word in a statute must be given meaning, if possible; no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found which will give force to and preserve every word of the statute. State v. Fontenot, 112 La. 628, 36 So. 630 (1904); State v. Dozier, 258 La. 323, 246 So.2d 187 (1971).
In construing a statute, legislative aim and design may be inquired into by the courts for the purpose of determining legislative intent, only when a statute is ambiguous or subject to two reasonable interpretations. Fire Department, above; State v. McCulloch, 126 So.2d 191 (La.App. 4th Cir. 1961).
We agree with Appellants' contention that the ordinances mandate a connection to the subscriber's set with switching capability which allows non-cable television reception. We also agree that the phrase "should the subscriber desire and request such reception" refers to non-cable television reception which, in turn modifies or qualifies "connections". We do not agree, however, that the words "and request" refers to "the person to whom the request is made to turn on the switch" as is contended by Appellants.
The trial court found that the concluding phrase "should the subscriber desire and request such reception", is a conditional phrase which gives rise to the mandate to perform. He concluded, therefore, that in the absence of a subscriber request for a *1186 connection which permits non-cable reception, Appellee is not obligated to provide such a connection. We agree.
Applying the interpretative presumption that every word in a statute is presumed to have meaning and serve a useful purpose, and that no statutory language may be deemed unnecessary or superfluous, we find the words "and request" can be given meaning only if they are considered to modify the phrase "shall make connections". We are fortified in this conclusion by the fact that "request" is couched in the conditional "should the subscriber desire and request ___".
We deem it obvious that the primary concern of a subscriber is receptionnot connections. The subscriber is interested in connections and other operational apparata only to the extent such devices enable the quality and type of reception he desires. We believe it reasonable to suppose, therefore, that if a subscriber desires a type of reception other than that which Appellee offers, the subscriber would request a connection capable of allowing such other reception.
Additionally, we are of the view that to hold subject paragraph to be mandatory irrespective of a subscriber request, would in effect utterly delete the verb "request" from the ordinances. Had the enacting bodies intended the provision to be compulsory, inclusion of the conditional phrase "should the subscriber desire and request ___" would be completely unnecessary.
We find that our interpretation gives meaning, intent and purpose to every word in the ordinances, which we are required to do. State v. Dozier, 258 La. 323, 246 So.2d 187 (1971).
The judgment is affirmed at Appellants' cost.
Affirmed.