NUCOR STEEL LOUISIANA, LLC

VERSUS

ST. JAMES PARISH SCHOOL BOARD AND
NESHELLE NOGESS IN HER CAPACITY AS
TAX ADMINISTRATOR OF ST. JAMES
PARISH TAX AGENCY

NO. 20-CA-247

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE BOARD OF TAX APPEALS
STATE OF LOUISIANA
NO. L00560

November 05, 2021

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Stephen J. Windhorst, and John J. Molaison, Jr.

<u>**REVERSED AND REMANDED**</u>
  **SJW**
  **SMC**
  **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
NUCOR STEEL LOUISIANA, LLC
        Jesse R. Adams, III
        Camanda J. Fergus

COUNSEL FOR DEFENDANT/APPELLEE,
ST. JAMES PARISH SCHOOL BOARD AND NESHELLE NOGESS IN HER
CAPACITY AS TAX ADMINISTRATOR OF ST. JAMES PARISH TAX
AGENCY
        Drew M. Talbot

**WINDHORST, J.**

Plaintiff/appellant, Nucor Steel Louisiana, LLC ("Nucor" or "appellant"), appeals the judgment from the Louisiana Board of Tax Appeals (the "BTA"), granting the exception of prescription filed by defendants/appellees, St. James Parish School Board and Neshelle Nogess in her capacity as Tax Administrator of St. James Parish Tax Agency (collectively the "Collector"). For the reasons stated below, we reverse the BTA's judgment granting the exception of prescription, deny that exception, and remand for further proceedings.

**FACTS and PROCEDURAL HISTORY**

This appeal involves a substantial tax refund claim by Nucor, a direct-reduced iron ("DRI") manufacturing facility in St. James Parish. In the course of constructing its manufacturing facility, Nucor contracted with HYL Technology S.A. deC.V., Tenova S.P.A., and Tenova Core (collectively, "HYL") for the design, engineering and manufacture of a major component of its facility. Soon after operations began, Nucor experienced production issues with part of the equipment purchased from HYL, specifically the "Process Gas Heater" (the "PGH"), and, in November 2014, a portion of the PGH failed. After an investigation, the PGH's design was found to be inadequate. As a result, HYL agreed to rebate certain "back charges" related to the repair and reengineering of the PGH and other components of the DRI system to Nucor.[1] Given the rebate, Nucor paid HYL a total amount of $183,338,125.05 as opposed to the "contract price" of $197,360,000.00 for the equipment.

Pursuant to a "direct pay permit" with the Collector, Nucor had accrued and remitted sales and use tax to the Collector based upon the full contract price with HYL.[2] Because the total payments actually made by Nucor to HYL were less than

---

[1] This agreement was memorialized in a Settlement and Release Agreement on May 29, 2015.

the contract price, Nucor submitted a refund claim for $821,091.61 on January 26, 2016, asserting (1) an overpayment due to Nucor's calculation of the tax due for the HYL purchases; (2) a refund based upon the allowance for defective equipment agreed to by HYL in its reduction of the purchase price rebated to Nucor ("HYL Claim"); and (3) Nucor's purchase of hydrated lime used as a material for further processing in Nucor's manufacturing facility.

On April 13, 2016, the Collector acknowledged receipt of the refund claim by letter and requested additional documentation from Nucor. In May 2016, the Collector refunded the portion of the refund claim related to hydrated lime. Over the next several months, Nucor provided additional data to the Collector regarding the refund claim and the ongoing audit. The refund claim sought the refund of sales tax paid on the June 2012 through October 2013 sales and use tax returns. The Collector reviewed the invoices for this period as part of its audit. Throughout the period of the review, Nucor and the Collector entered into several "Agreement to Suspend Prescription of Taxes" that applied through October 15, 2017.[3]

The Collector prepared timelines dated September 14, 2016 and November 17, 2016 regarding the audit, which reflect that the Collector was diligently working with Nucor in reviewing the refund claim. This included requesting data, hiring outside counsel, reviewing invoices and contracts, touring the Nucor Facility, issuing a refund determination letter (wherein she outlined all of the actions she had taken, her legal basis for denying the claim and outlining Nucor's appeals rights), holding a redetermination hearing, and ultimately confirming her decision to deny the refund claim.

---

[2] A "direct pay permit" allows the Louisiana Department of Revenue to authorize certain sales tax dealers to pay directly to the Department. Qualifying entities will be issued a direct pay permit to provide to their suppliers instead of paying sales tax on authorized purchases or leases.

[3] The last "Agreement to Suspend Prescription of Taxes" suspended the running of the period of prescription against the assessment and collection of any sales or use taxes, interest and/or penalties due and owing, and any claim for refund by Taxpayer against Collector for the year(s) January l, 2011 through December 31, 2013 until October 15, 2017.

Appellant's brief, pp. 5-15, contains a complete detailed factual chronology of the interaction between Nucor and the Collector related to the claim and the evaluation process from the beginning through the appeal and decision of the BTA. Its accuracy is supported by the record. We also take note of Ms. Nogess' estimable qualifications, and that at all times pertinent, she had legal counsel.

On July 26, 2017, the Collector toured Nucor's facility, and in an email dated the next day, the Collector stated that the tour provided perspective on critically important facts relevant to the legal issues that will help them make determinations on Nucor's refund claim. In August, the parties negotiated a confidentiality agreement related to Nucor providing the Collector with the Settlement Agreement with HYL and other confidential data. That month, Nucor provided the Collector with warranty information, a detailed breakdown of the rebate, and other information regarding the HYL claim.

In September 2017, Nucor provided the Collector with a full copy of the Settlement Agreement with HYL, as HYL finally agreed to a full disclosure of the Agreement. The Collector also issued a "preliminary report" which indicated that two portions of the refund claim were still in progress. Following this report, Nucor and the Collector continued to exchange information. In October 2017, Nucor resubmitted its refund claim. The Collector continued to correspond with Nucor through February 2018 regarding different aspects of the refund claim and finally made a determination. The record contains correspondence between the parties during this period discussing issues related to the refund claim, indicating the Collector was meeting with outside counsel to assist in her consideration of the refund claim, and requesting additional information.

The Collector finally sent Nucor a refund claim determination letter, denying Nucor's refund claim on February 23, 2018. In the letter, the Collector set forth the various actions the Collector took in considering the refund claim. The Collector

also informed Nucor of its right to seek reconsideration or redetermination, and/or to appeal the denial of the refund claim. Specifically, the Collector stated the following:

> Should Nucor disagree with or dispute the Collector's final determination, pursuant to La. R.S. 47:337.81, **Nucor has ninety (90) calendar days from the date of the certified mailing of this notice of refund claim determination letter to appeal to the Board of Tax Appeals** ("BTA"). [Emphasis added.]
>
> Under La. R.S. 47:337.81A, Nucor may within thirty (30) days of this notice request a hearing with the Collector for redetermination. Any request for additional consideration, reconsideration, redetermination, or other action by the Collector with respect to this refund claim determination letter shall not operate to extend the ninety (90) day period within which an appeal to the BTA must be taken by Nucor.

Nucor timely requested an informal hearing with the Collector for redetermination of its refund claim. On May 14, 2018, the Collector sent Nucor a refund claim redetermination hearing letter, in which the Collector informed Nucor that it was confirming in part and revising in part its original refund claim determinations. After the Collector denied Nucor's refund claim, Nucor followed the Collector's instructions regarding filing an appeal with the BTA.

On May 24, 2018, Nucor filed a petition for redetermination of the denial of a claim for refund with the BTA. In response to Nucor's petition, the Collector asserted for the first time that Nucor had failed to timely file its appeal of the Collector's alleged "failure to act" as provided for in La. R.S. 47:337.81 (A)(2). The Collector contended that, on July 26. 2017, the 180 day time period for Nucor to appeal the Collector's "failure to act" lapsed. Thus, based on the Collector's position, because it had failed to render a decision within 180 days of the one year anniversary of Nucor filing the refund claim, Nucor was obligated to file its appeal with the BTA by July 26, 2017 and that Nucor had failed to file within this time frame.

After the trial on the exception, the BTA concluded that, despite the Collector's active review of the refund claim, the Collector "failed to act" and, thus, Nucor was obligated to appeal the refund claim within 180 days of the one-year anniversary of Nucor's filing of the refund claim. The BTA held that "the failure to act" described in La. R.S. 47:337.81(A)(2) means "the failure to render a decision on a refund claim." The BTA also concluded that the Collector did not renounce prescription in its denial letter, in which Nucor was informed that it had ninety days to appeal the decision. The BTA further concluded that based upon the evidence in the record the Collector had not undertaken sufficient affirmative action to support a claim of estoppel with respect to prescription. Finally, as to the agreements to suspend prescription, because it was the BTA's understanding that "Nucor is not claiming the agreements suspend the prescriptive period at issue in this case," the BTA did not rule on the application of these agreements to the prescription issue. The BTA granted the Collector's exception of prescription and dismissed Nucor's petition with prejudice.

**LAW and ANALYSIS**

In assignments of error 1, 2, and 3, Nucor asserts that the BTA erred in sustaining the Collector's exception of prescription regarding Nucor's refund claim based upon the conclusion that a collector only "fails to act," as contemplated by La. R.S. 47:337.81(A), when the collector fails to grant or deny a refund claim. In addition, appellant argues that the BTA erred in concluding that the Collector's active review and consideration of Nucor's refund claim did not constitute an "act" for purposes of La. R.S. 47:337.8 1(A).

In assignment of error 4, Nucor contends that the Collector renounced prescription by its conduct of the evaluation of the claim, correspondence, and its letter of disallowance in which notice of Nucor's right to appeal within 90 days was expressly given.

In assignment of error 5, Nucor contends that the Collector is estopped from asserting prescription based on it conduct.

In assignment of error 6, Nucor contends that the agreements to suspend prescription of taxes extended the prescriptive period for Nucor's appeal of the Collector's denial of the refund claim.

We find that assignments of error 1–3 are interrelated, and discuss them together. Although related factually, we discuss assignment of error 5 separately. We conclude that assignments of error 1, 2, 3 and 5 have merit, and pretermit discussion on assignments of error 4 and 6.

**Standard of Review**

La. R.S. 47:1435 provides that the courts of appeal have exclusive jurisdiction to review the decisions or judgments of the BTA. International Paper, Inc. v. Bridges, 07-1151 (La. 01/16/08), 972 So.2d 1121, 1127; Zelia, LLC v. Robinson, 19-372 (La. App. 5 Cir. 12/30/19), 286 So.3d 1268, 1272, reh'g denied (Jan. 10, 2020), writ denied, 20-253 (La. 4/27/20), 295 So.3d 948. The BTA's findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record. International Paper, Inc., 972 So.2d at 1127-28. For questions of law, if the BTA has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed. Zelia, 286 So.3d at 1272. When one or more trial court legal errors interdict the fact-finding process, and the record is otherwise complete, the reviewing court must conduct a *de novo* review. W. Jefferson MRI, LLC v. Lopinto, 19-82 (La. App. 5 Cir. 11/27/19), 284 So.3d 1272, 1275, writ denied, 20-64 (La. 3/9/20), 294 So.3d 479, and writ denied, 19-2076 (La. 3/9/20), 294 So.3d 486.

**Application of the 90-day filing period**

The Collector argues, and the Board held, that prior to the Collector's issuance of the February 23, 2018 Refund Claim Determination letter (*i.e.*, the "notice of disallowance"), the 180-day window provided by La. R.S. 47:337.81 A(2) had already closed, and that the 90-day period which commences upon notice of disallowance as provided in La. R.S. 47:337.81 B(1) does not apply. For the reasons which follow, we disagree.

La. R.S. 47:337.81 A and B provide**:**

A. (1) If the collector fails to act on a properly filed claim for refund or credit within one year from the date received by him or by the Louisiana Uniform Local Sales Tax Board or if the collector denies the claim in whole or in part, the taxpayer claiming such refund or credit may within thirty days of the notice of disallowance of the claim request a hearing with the collector for redetermination. The collector shall render a decision within thirty days of the request by the taxpayer.

(2) The taxpayer may appeal a denial of a claim for refund to the Board of Tax Appeals, as provided by law. No appeal may be filed before the expiration of one year from the date of filing such claim unless the collector renders a decision thereon within that time, nor after the expiration of ninety days from the date of mailing by certified or registered mail by the collector to the taxpayer of a notice of the disallowance of the part of the claim to which the appeal relates, nor after the expiration of one hundred eighty days from the end of the <u>expiration of the one</u> year in which the collector failed to act.

 (3) <u>A taxpayer's proper appeal to the Board of Tax Appeals filed within ninety days from the date on **any** notice of disallowance issued shall also establish that the appeal was filed within ninety days from the date of the certified or registered mailing of the notice.</u>

B. (1) <u>A notice of disallowance, if issued, shall inform the taxpayer that he has ninety days from the date of the certified or registered mailing of that notice to appeal to the Board of Tax Appeals and that</u> any consideration, reconsideration, or action by the collector with respect to the claim following the mailing of a notice by certified or registered mail of disallowance shall not operate to extend the period within which an appeal may be taken.

(2) <u>The failure to transmit this notice does not extend the separate and distinct prescriptive period that runs following one year of inaction by the collector.</u>

All underlined language in the foregoing was added by Act 210 of 2015. Section 7 provides that the act shall be effective on Governor's signature, which was on June 23, 2015.[4] The boldface emphasis of "**any**" in subsection A(3) is added. Hereafter, all references to the provisions of La. R.S. 47:337.81 will be to subsection A or B.

The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-2371 (La. 7/1/08), 998 So.2d 16, 26, amended on reh'g (Sept. 19, 2008). The starting point in the interpretation of any statute is the language of the statute itself. Id.; Theriot v. Midland Risk Ins. Co., 95-2895 (La. 5/20/97), 694 So.2d 184, 186. The well-established rules of interpretation provide that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9; M.J. Farms, Ltd., 998 So.2d at 27. "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10; M.J. Farms, Ltd., 998 So.2d at 27.

Legislative language is interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. Id. The words used must be interpreted as they are generally understood. La. C.C. art. 11; State v. Louisiana Land & Expl. Co., 12-0884 (La. 1/30/13), 110 So.3d 1038, 1044. Courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. C.C. art. 13; City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548 (La. 10/1/07), 986 So.2d 1, 15, on reh'g (Jan. 7, 2008).

---

[4] Section 4 of the act makes the amendment to La. R.S. 47:337.81 A(2) effective June 12, 2014. This amendment inserts only the words, "expiration of the one." Its only effect is to cause the 180-day window provided by this paragraph to commence 26 days later. This amendment is inapplicable to this case.

We conclude that Nucor is entitled to application of the 90-day period commencing upon the date of the Collector's mailing by certified or registered mail of the notice of disallowance. Section (A)(2) provides that no appeal may be filed after expiration of ninety days from the date of the collector's mailing by certified or registered mail of the notice of disallowance. Section (A)(3) states that "A taxpayer's proper appeal to the Board of Tax Appeals filed within ninety days from the date on any notice of disallowance issued shall also establish that the appeal was filed within ninety days from the date of the certified or registered mailing of the notice." Finally, Section (B)(1) requires the collector to inform the taxpayer in a notice of disallowance "that he has ninety days from the date of the certified or registered mailing of that notice to appeal to the Board of Tax Appeals." Thus, in three separate provisions of the same statute, the Legislature has undeniably expressed its intent for the taxpayer to have ninety days from the date of notice of disallowance to appeal his or her claim to the BTA. To ignore this directive from the Legislature would be to ignore the clear intent and purpose of the law.

We draw our conclusion from a plain reading of the law, which provides for a 90-day appeal delay after notification of disallowance, and further *requires* that the tax collector inform the taxpayer of the right to file an appeal within 90 days of disallowance. The Legislature enacted the requirement that the taxpayer be so informed of the 90-day limit for appeal because the Legislature intended the taxpayer to have an appeal if filed within 90 days of notice, and surely intended that the taxpayer can rely on the notice it has mandated. Any interpretation that the Legislature enacted this clear mandate for an unambiguous, exception-free notice of appeal, but did not intend for it to be true, would lead to absurd results.

It is obvious that in enacting Act 210 of 2015, the Legislature was cognizant of the co-existence of the two potentially conflicting provisions. Subsection B (2) provides that the *failure* by the collector to transmit this notice does not extend the

separate and distinct prescriptive period that runs following "one year of inaction by the collector." In this case, however, the Collector did not fail to act, but conducted a thorough and extensive investigation, and did not fail to transmit a letter of disallowance including the required notice of appeal rights within 90 days. It is significant that the Legislature here characterizes the year in which a collector "fails to act" as the "one year of **inaction** by the collector," thereby equating failing to act with mere inaction.

Furthermore, to the extent that the provisions requiring notice of the right to appeal within 90 days of disallowance conflict with the 180-day provision, the "within 90 days of disallowance" is the more recent expression of legislative will.

In this case, the Collector mailed the initial notice of refund claim determination to Nucor on February 23, 2018. Nucor had ninety days from the mailing date of this letter to file its appeal with the BTA. Nucor filed its petition on May 24, 2018 with the BTA within the ninety-day period, and thus timely filed its appeal.

### Construction of "fails to act" and application of the 180-day period

In construing La. R.S. 47:337.81A(1), the BTA interpreted the phrase "failed to act" to mean the "failure to render a decision." This interpretation gives a broad and general phrase a very specific meaning. If given its ordinary or familiar meaning, "failed to act" means failed to do something, anything, or failed to take action. Further, the phrase "fails to act" is used in subsection A(1), but in subsection A(2), the more specific phrase "unless the collector renders a decision" is used, having a more restrictive meaning. Use of two different phrases, both in subsection A, indicates that the legislature intended that the two different phrases have different meanings. We therefore find that the Legislature would have or should have used the words "fails to render a decision" instead of "fails to act" had it intended for the appeal period to commence before a decision has been rendered and while a claim is still under consideration.

As noted above, subsection B(2) refers to the 180-day prescriptive period as the "distinct prescriptive period that runs following one year of **inaction** by the collector." [Emphasis added.] Thus, this statute characterizes the year in which a collector "fails to act" as a one-year period of **inaction**, after which the 180-day prescriptive period commences to run. This paragraph thereby equates a collector's failure to act with simple "inaction." The appeal record clearly shows that the Collector was continuously and regularly investigating and re-evaluating the refund claim at the time by which it now contends the appellant should have filed an appeal, and that there was no "one year of inaction" at any time prior to the notice of disallowance.

In this case, there are two interpretations of the relevant statutory law. An interpretation construing "fails to act" to mean "fails to render a decision" leads to the absurd result that the taxpayer would be forced to appeal a decision which has not yet been rendered, and while the claim is under evaluation. To adopt and apply the interpretation which, at least under these circumstances, results in the absurd requirement that a taxpayer must file an appeal during the course of an ongoing evaluation but before a ruling on the claim cannot be the intended or proper application of the law. Forcing an appeal while the claim is under consideration would be contrary to the goal of resolving a claim without the expense and effort of litigation. See Joseph v. Huntington Ingalls Incorp., et al., 18-2061 (La. 1/29/20), 2020 WL 499939. It is fundamental that statutory interpretation should not lead to absurd results. Johnson v. Occidental Life Insurance Company of California, 368 So.2d 1032 (La. 1979), Louisiana State Bd. of Med. Examiners v. Bertucci, 593 So.2d 798, 801 (La. Ct. App. 4 Cir. 1992). When a statute is subject to two reasonable interpretations, courts may consider legislative aim and design to determine legislative intent. Louisiana Television Broad. Corp. v. Total C.A.T.V., 341 So.2d 1183, 1185 (La. Ct. App. 1 Cir. 1976), writ refused, 343 So.2d 1076 (La.

1977).  An interpretation requiring that the taxpayer file an action against the collector during the collector's evaluation process before knowing the result thereof and from what to appeal is an absurdity.

Accordingly, we find that the BTA's conclusion that "the failure to act described in La. R.S. 47:337.81 (A)(2) *necessarily* means failure to render a decision on a refund claim" was in error.

It is well-settled that "prescriptive statutes are strictly construed against prescription and in favor of the obligation sought to be extinguished; thus, of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."  Carter v. Haygood, 04-646 (La. 1/19/05), 892 So.2d 1261, 1268.  The rules of prescription are designed to prevent old and stale claims from being prosecuted.  Prevo v. State ex rel. Dep't of Pub. Safety & Corr. Div. of Prob. & Parole, 15-0823 (La. 11/20/15), 187 So.3d 395, 398.  In our opinion, a refund claim that has not yet been granted or denied cannot be an old or stale claim. A claim that is actively being investigated and for which there is no final decision is not ripe for litigation.

Considering the foregoing, based on our interpretation of La. R.S. 47:337.81, we find that "failed to act" means the failure to do anything regarding a claim.  Given that the Collector did not fail to act relative to Nucor's refund claim, this part of the statute does not apply.  Under La. R.S. 47:337.81, Nucor had ninety days from the date of mailing by certified or registered mail by the Collector the notice of the disallowance or denial of the refund claim.  In that the Collector mailed the notice of denial of the refund claim on February 23, 2018 and Nucor filed its petition with the BTA on May 24, 2018, within the ninety-day period, Nucor timely filed its appeal.  We therefore conclude that the BTA erred in its judgment granting the Collector's prescription exception.

**Estoppel**

Nucor asserts that the BTA erred in failing to conclude that the Collector was estoppel from asserting prescription in this case. La. C.C. art. 1967 sets forth the theory of detrimental reliance:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

The purpose of the detrimental reliance theory is "to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." Suire v. Lafayette City-Par. Consol. Gov't, 04-1459 (La. 4/12/05), 907 So.2d 37, 58-59. Detrimental reliance requires proof of (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Id.

In its notice of disallowance of the refund claim, the Collector represented to Nucor that it had "ninety (90) calendar days from the date of certified mailing of this Notice of Refund Claim Determination letter to appeal to the Board of Tax Appeals." Indeed, La. R.S. 47:337.81(B)(1) states that "A notice of disallowance, if issued, shall inform the taxpayer that he has ninety days from the date of the certified or registered mailing of that notice to appeal to the Board of Tax Appeals…." Considering this statutory directive, we believe the Collector clearly made a representation to Nucor that it had ninety days from the notice of disallowance to appeal its refund claim to the BTA and that Nucor reasonably relied on this representation. Nucor, by law, is granted the right to rely on this representation. Further, the record shows that Nucor relied on this representation to its detriment because Nucor waited to file its appeal within the ninety-day time frame.

Accordingly, given these facts, we find that the Collector is estopped from asserting prescription.

Furthermore, we recognize that Article VII, Section 3(A), of the Louisiana Constitution provides that legislature shall "provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." La. R.S. 47:15 sets forth the taxpayer's bill of rights, which includes the right to be treated fairly, courteously, and with respect" and "to receive a refund, in some cases with interest, for any taxes overpaid so long as the refund claim is timely." The record reflects that here the Collector continued to evaluate Nucor's refund claim, informed Nucor that it was evaluating its claim and repeatedly requested more information, and met with Nucor regarding the refund claim. The Collector also informed Nucor that it would have an opportunity to appeal the Collector's decision once that decision was made. To sanction the Collector's conduct of engaging Nucor in this manner and then deprive Nucor of its right to appeal would be contrary to the principles of the taxpayer bill of rights and allow a governmental entity to mislead a law-abiding taxpayer.

**DECREE**

For the foregoing reasons, we reverse the BTA's judgment granting the Collector's exception of prescription, we overrule the exception of prescription, and remand this matter for further proceedings.

<u>**REVERSED AND REMANDED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 5, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-247

**E-NOTIFIED**
BOARD OF TAX APPEALS (CLERK)
ANDRE B. BURVANT (APPELLANT)          CAMANDA J. FERGUS (APPELLANT)          JESSE R. ADAMS, III (APPELLANT)
DREW M. TALBOT (APPELLEE)

**MAILED**
LOUISIANA BOARD OF TAX APPEALS
(DISTRICT JUDGE)
POST OFFICE BOX 3217
BATON ROUGE, LA 70821